**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BENJAMIN OCHIENG,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE VANGUARD GROUP, INC.,**<br><br>**Defendant.** | **CIVIL ACTION NO. ____________**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND JURY DEMAND**

Plaintiff Benjamin Ochieng, by and through his attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages, attorneys' fees and other relief on behalf of Plaintiff Benjamin Ochieng (hereinafter "Plaintiff" or "Mr. Ochieng"), a former employee of The Vanguard Group, Inc. (hereinafter "Vanguard" or "Defendant"). Despite his loyalty and consistent performance, Mr. Ochieng was subjected to discrimination and harassment on the basis of his race, national origin and age, and to retaliation for complaining about discrimination and harassment, culminating in his wrongful termination on September 19, 2025.

2. This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On July 21, 2025, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge Number 530-2025-07995 and dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On December 4, 2025, Plaintiff filed an Amended Charge of Discrimination with the EEOC, which was also dual-filed with the PHRC. On September 15, 2026, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims alleged herein, it has been greater than one year since Mr. Ochieng dual-filed his Charge as a Complaint with the PHRC.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendant in this jurisdiction.

**PARTIES**

9. Plaintiff Benjamin Ochieng is an adult male citizen and resident of West Chester, Pennsylvania and the United States of America. Mr. Ochieng is Black and of Kenyan national origin.

10. Mr. Ochieng is over forty (40) years of age and within the class of individuals protected against discrimination by the ADEA.

11. At the time of his termination, Mr. Ochieng was forty-one (41) years old.

12. Defendant The Vanguard Group, Inc. ("Vanguard") is a company with a principal place of business located at 100 Vanguard Blvd., Malvern, Pennsylvania 19355, where Plaintiff was employed.

13. At all relevant times, Defendant is and has been an employer employing more than five hundred (500) employees.

14. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

15. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

16. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

17. At all relevant times hereto, Plaintiff was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

18. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

19. This Honorable Court has personal jurisdiction over the Defendant.

## FACTS

20. Mr. Ochieng began his employment with Vanguard in 2021 in the position of Senior Manager in Data Science.

21. During and throughout his employment with Vanguard, Mr. Ochieng performed his duties in an efficient, effective and exemplary manner.

22. Notwithstanding his excellent record and job performance, Mr. Ochieng was subjected to discrimination and harassment on the basis of his race, national origin and age, and to retaliation for raising complaints about discrimination and harassment, culminating in his wrongful termination on September 19, 2025.

23. For the first four years of his employment with Vanguard, Mr. Ochieng, who is Black, of Kenyan national origin, and over forty years of age, received consistently positive and strong reviews and supervised a team of ten to fifteen individuals.

24. In his first four years at Vanguard, Mr. Ochieng reported to Ernie Overholt and Sampath Kumar, who were both Senior Directors and Level 6 managers (a higher level than Mr. Levy, who is a Level 5 manager), and who provided Mr. Ochieng with consistently strong annual performance appraisals during each of Mr. Ochieng's first four years.

25. As a testament to his strong performance, Mr. Ochieng consistently received significant salary increases and bonuses each year after his annual performance reviews, which were authorized by Mr. Kumar and Mr. Overholt, among others.

26. In January 2025, Mr. Ochieng was placed under the management of Fernando Levy.

27. Nearly immediately after he began to report to Mr. Levy, Mr. Ochieng observed that he was treated markedly differently than he had been treated prior, and that Mr. Levy's treatment towards Mr. Ochieng was noticeably less favorable than the treatment Mr. Levy afforded to Mr. Ochieng's non-Black, non-Kenyan and younger colleagues.

28. Where Mr. Ochieng had previously received only positive feedback and reviews regarding his performance, after he began reporting to Mr. Levy, within months, Mr. Ochieng was required to attend regular coaching sessions with Mr. Levy.

29. Mr. Ochieng was marked as "off track" on his first mid-year review after Mr. Levy took over.

30. During Mr. Ochieng's mid-year review discussion, Mr. Levy told Mr. Ochieng that he "did not look like a Senior Manager", displaying his open racial animus against Mr. Ochieng.

31. Despite all of Mr. Ochieng's subordinates and direct reports being rated as "on track," Mr. Ochieng, who supervised these employees, was marked "off track" and blamed for every failure of the team while simultaneously not receiving any of the credit for the team's successes.

32. During one coaching session, Mr. Levy coached Mr. Ochieng on how to use "performance issues" as an excuse to weed out employees who were not viewed as a good fit, even if those employees were performing satisfactorily and were meeting expectations.

33. This is precisely what Mr. Levy did with respect to Mr. Ochieng, singling him out for criticism regarding non-existent performance delinquencies while not similarly criticizing Mr. Ochieng's non-Black, non-Kenyan and younger colleagues, including other direct reports of Mr. Levy's and other similarly situated Senior Managers.

34. Mr. Levy permitted teams led by other, non-Black, non-Kenyan employees (specifically including teams led by Brian Bieber and Mike Boteilho) to fill open roles and to be fully staffed. However, Mr. Levy did not allow Mr. Ochieng to fully staff his team.

35. Mr. Levy openly questioned Mr. Ochieng's qualifications, stating verbally and in writing that Mr. Ochieng was not fit to be a senior manager, despite Mr. Ochieng's years of success in the role, years of success in the data science field, and his team's continued success. Mr. Levy did not similarly question or denigrate the qualifications of other non-Black, non-Kenyan senior managers and other employees.

36. Mr. Levy openly questioned Mr. Ochieng's qualifications and fitness to be a senior manager despite the higher-ranked and more experienced supervisors who preceded Mr. Levy providing Mr. Ochieng with consistently strong annual performance appraisals during each of Mr. Ochieng's first four years.

37. In early 2025, three direct reports on Mr. Ochieng's team were promoted due to their outstanding impact, and these promotions were celebrated in division town halls attended by hundreds of employees.

38. Despite this public evidence of strong mentorship, leadership and career development of junior team members, Mr. Levy still openly questioned Mr. Ochieng's qualifications and fitness to be a senior manager.

39. In February 2025, Mr. Levy insisted that Mr. Ochieng hire Heidi Warning, a Caucasian woman in her twenties with no prior leadership experience, for an open manager role reporting to Mr. Ochieng. Mr. Levy demanded that Mr. Ochieng not interview any other candidates, remove the job posting for the open position, and immediately hire Ms. Warning.

40. Mr. Levy then insisted that Ms. Warning take over full ownership and management of the largest client on the team, a responsibility that previously was shared between Mr. Ochieng and the employee Ms. Warning was hired to replace.

41. In January, February, March and April of 2025, Mr. Ochieng's entire team was marked as "on track" to meet the team's published and documented goal despite not being fully staffed.

42. Despite this, in May 2025, Mr. Levy marked Mr. Ochieng alone as "off track," citing two concerns: the first relating to leadership missteps by Ms. Warning in managing the client that she had taken over sole management responsibilities for; and a second relating to leadership missteps by a non-Black, non-Kenyan peer of Mr. Ochieng's, Vivek Venkataswamy, who managed a different internal client.

43. Mr. Levy then immediately placed Mr. Ochieng on a Coaching Plan, the equivalent of a Performance Improvement Plan.

44. Mr. Levy did not similarly give negative reviews to Ms. Warning or her team, or Mr. Venkataswamy or his team.

45. As a result of the foregoing discriminatory treatment, on or about May 28, 2025, Mr. Ochieng complained, including in writing, to Katie Stem of Human Resources, that he believed he was being discriminated against and harassed on the basis of his age, race and national origin.

46. Mr. Ochieng indicated that he was considering filing a Charge of Discrimination with the EEOC, and that he was considering further escalating his concerns of discrimination and harassment.

47. Immediately after receiving his negative and discriminatory mid-year review, Mr. Ochieng submitted a written rebuttal in the company's online Workday system, documenting his team's accomplishments, as well as his individual accomplishments, which he believed were intentionally overlooked by Mr. Levy.

48. Mr. Ochieng's rebuttal included written feedback by senior level stakeholders celebrating the contributions of Mr. Ochieng and his team and provided evidence that Mr. Ochieng's team was fully on-track to achieve the goals set for his team jointly by Mr. Kumar (who had been Mr. Ochieng's manager prior to January 2025) and Marissa Blank (a Level 6 stakeholder to Mr. Ochieng's team).

49. Mr. Levy verbally responded to Mr. Ochieng's rebuttal stating, "this does not change anything."

50. Mr. Ochieng followed up with Ms. Stem on May 27, 2025 and June 2, 2025 to provide further detailed, written evidence of the discrimination and harassment he was experiencing, including providing screenshots, emails, team surveys, links and other documents that Mr. Ochieng believed, in good faith, would assist Vanguard and Human Resources in putting an end to the discrimination and harassment we was experiencing.

51. The Coaching Plan included completing a project with equal participation from Kelly Sciblo (a Caucasian, American-origin individual in her thirties), Ms. Warning (a Caucasian, American-origin individual in her twenties) and Marissa Garges (a Caucasian, American-origin individual in her twenties).

52. The four individuals completed the project successfully and to the full satisfaction of Global Risk division partners (specifically Liz Brudowsky).

53. Despite this, Mr. Levy singled out Mr. Ochieng for manufactured and non-existent "performance issues" while not similarly assigning any blame to Ms. Sciblo, Ms. Warning or Ms. Garges, each of whom were fully involved in the project.

54. Throughout June, July and August of 2025, Mr. Ochieng was required to attend weekly coaching meetings with Mr. Levy, which Mr. Levy used insidiously as a forum for increased scrutiny, heightened hostility and additional misplacement of blame on Mr. Ochieng.

55. Ms. Stem of Human Resources responded verbally to Mr. Ochieng's complaints and concluded that there was no evidence of discrimination.

56. No documentation or evidence was provided by Human Resources relating to their investigation, which led Mr. Ochieng to believe that there was willful blindness and no good-faith attempt to investigate the matter and to prevent further harassment, discrimination and retaliation by Mr. Levy and his supervisors.

57. After his complaints, Mr. Ochieng was retaliated against and the discrimination and harassment against him increased.

58. In late July 2025, despite Mr. Ochieng meeting the outlined goals of Mr. Levy's Coaching Plan, Mr. Levy placed Mr. Ochieng on a retaliatory and discriminatory Performance

Improvement Plan, consistent with Mr. Levy's coaching that "performance issues" could be used illegitimately as a tool to weed out employees.

59. The Performance Improvement Plan was discriminatory and retaliatory, as evidenced by several factors.

60. First, the suspicious timing of the PIP: the PIP was issued less than two months after Mr. Ochieng engaged in protected activity by complaining to Human Resources in writing regarding discrimination, and only three days after Mr. Ochieng filed an EEOC Charge and informed Ms. Stem in Human Resources that he had done so.

61. Second, the disparity in treatment between Mr. Ochieng and others: the PIP alleged missteps in a "Roles & Responsibilities" group project assigned to Mr. Ochieng and three similarly situated peers, Ms. Sciblo, Ms. Warning and Marissa Garges, all of whom are Caucasian, American-origin, and under forty.

62. These other employees were not placed on a PIP despite equal involvement in the project. Instead, Mr. Ochieng was selectively disciplined for shared work.

63. The PIP alleges that Mr. Ochieng's team "scrambled ... missed commitments or issues that [were] surfaced by our stakeholders."

64. Nonetheless, not one member of Mr. Ochieng's team of approximately ten employees was put on a PIP, as they were all non-Black, non-Kenyan and under forty.

65. Mr. Ochieng was treated differently because he is Black, Kenyan and over forty, and the treatment worsened right after Mr. Ochieng engaged in protected activity.

66. Third, the PIP raised inconsistent performance concerns.

67. The PIP alleges deficiencies in "driving outcomes."

68. However, these contradict Mr. Ochieng's strong performance in his initial four years at Vanguard, during which he was invited regularly to speak with the Chief Risk Officer (Mr. Joe Brennan), the Chief Analytics Officer (Mr. Ryan Swann) and their leadership teams.

69. Furthermore, Mr. Ochieng and his team delivered at least fifteen outcomes (or projects) between January and July 2025, including a new, high-impact "risk reporting package" delivered directly to the Chief Risk Officer that elicited strong written praise from the Chief Risk Officer's team.

70. Mr. Ochieng and his team's fifteen or more outcomes were intentionally and blatantly ignored by Mr. Levy in the PIP in order to create a false narrative of poor performance right after Mr. Ochieng engaged in protected activity.

71. Fourth, the hostile language of the PIP demonstrates that it was not a good-faith attempt to coach Mr. Ochieng but rather an insidious attempt to punish Mr. Ochieng for engaging in protected activity.

72. For example, the PIP pre-empts termination on two occasions, i.e., "lack of progress may result in further performance management, up to and including termination"; it references vague success measures, e.g., "clarity of strategic direction" and "observable growth in subject matter leadership"; and it is punctuated with a list of action items marked in bold and underlined as "not exhaustive."

73. The structure and language of this PIP would dissuade a reasonable person from complaining about harassment and discrimination.

74. Mr. Levy continued to blatantly ignore Mr. Ochieng's individual and team accomplishments, as well as Mr. Ochieng's leadership, and continued to shift blame away from

non-Black, non-Kenyan, younger employees. Ms. Warning, Mr. Venkataswamy and Ms. Sciblo faced no punitive actions.

75. None of them were placed on Coaching Plans or Performance Improvement Plans despite their direct responsibility for the alleged deficiencies attributed to Mr. Ochieng.

76. On July 21, 2025, because the discrimination, harassment and retaliation continued unabated despite his complaints to Human Resources, Mr. Ochieng filed a Charge of Discrimination with the EEOC.

77. In July and August 2025, Mr. Ochieng fulfilled all requirements of the Performance Improvement Plan and provided documented evidence of such to Human Resources, Mr. Levy, Mr. Levy's current manager (Jennifer Manry) and Mr. Levy's previous manager (Sampath Kumar).

78. Despite this, Mr. Ochieng continued to be subjected to differential treatment, discrimination, harassment and retaliation.

79. In his May 27, 2025 communication to Ms. Stem, Mr. Ochieng included a written request to Ms. Stem to inform Mr. Kumar and Jennifer Manry of the discrimination and harassment he was experiencing.

80. Ms. Stem responded on May 28, 2025 that "Sampath Kumar and Jennifer Manry have been alerted about your claim and made aware that an investigation is taking place."

81. Thereafter, in June, July and August 2025, Mr. Ochieng provided documented evidence to Ms. Stem, Mr. Kumar and Ms. Manry of his work projects and team accomplishments a OneDrive document providing progress updates and a log of his work and team accomplishments, along with other information showing that he fulfilled all requirements of his Performance Improvement Plan.

82. Despite the foregoing, Ms. Stem did not respond to the progress update provided in the OneDrive document at any point in June, July or August 2025.

83. Despite being in a position of authority, Ms. Stem did not intervene to stop the discrimination and harassment that Mr. Ochieng was experiencing, and did not take any action to Mr. Ochieng's knowledge.

84. Despite the foregoing, Mr. Kumar did not respond to any emails from Mr. Ochieng in June, July or August 2025, he did not respond to the OneDrive document Mr. Ochieng had shared or the progress updates therein, and he cancelled a scheduled 1-on-1 meeting with Mr. Ochieng.

85. Despite being in a position of authority and in a position to intervene to stop the discrimination and harassment Mr. Ochieng was experiencing, Mr. Kumar did not take any action to Mr. Ochieng's knowledge.

86. Despite the foregoing, Ms. Manry did not respond to any emails from Mr. Ochieng in June, July or August 2025, and she did not respond to the OneDrive document Mr. Ochieng had shared or the progress updates therein.

87. Despite being in a position of authority and in a position to intervene to stop the discrimination and harassment Mr. Ochieng was experiencing, Ms. Manry did not take any action to Mr. Ochieng's knowledge and she did not reassign Mr. Levy despite authority to do so, and instead permitted Mr. Levy to continue making decisions affecting Mr. Ochieng.

88. Mr. Ochieng complained again in late August or early September 2025 to Jennifer Manry, Mr. Levy's manager and an officer of the company, during a one-on-one conversation, and provided written evidence within a slide deck that he provided to Ms. Manry a week in advance of their conversation.

89. Mr. Ochieng specifically complained about discrimination, harassment and retaliation, and informed Ms. Manry that he had filed a Charge of Discrimination with the EEOC, as well as previously submitted complaints to Human Resources.

90. Despite Mr. Ochieng's direct conversation and written complaint to Ms. Manry, there was no improvement in Mr. Ochieng's experience, which led Mr. Ochieng to believe that there was willful blindness and no good-faith attempt by Ms. Manry or Vanguard to prevent further discrimination, harassment and retaliation.

91. Approximately two weeks later, on September 19, 2025, Mr. Ochieng was invited to a virtual meeting with Mr. Levy and Human Resources Analyst Candace Cathey and was terminated.

92. Mr. Ochieng was informed that his termination was a result of a "gap in performance."

93. During the meeting, Ms. Cathey called building security personnel to locate Mr. Ochieng in the building and walk him out.

94. Given the disparate treatment between Mr. Ochieng and non-Black, non-Kenyan, younger employees, including other senior managers, and given the timing between his complaints about discrimination and harassment and his placement on a Performance Improvement Plan and termination, Mr. Ochieng maintains that Defendant's proffered reason, performance, is merely pretext for discrimination and retaliation.

95. Based on the foregoing, Mr. Ochieng was subjected to discrimination and harassment on the basis of his race, national origin and age, and retaliated against because of his complaints about discrimination and harassment, in violation of Title VII, the ADEA, Section 1981 and the PHRA.

96. Defendant willfully violated Title VII, the ADEA, Section 1981 and the PHRA, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated Title VII, the ADEA, Section 1981 and the PHRA.

97. Mr. Ochieng has suffered and continues to suffer mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

98. Defendant and its agents acted with the intent of causing, or with reckless disregard for the probability that their actions would cause, Mr. Ochieng severe emotional distress.

99. Mr. Ochieng has suffered financial losses, which include, among other things, lost wages and benefits, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

**COUNT I**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.**
**(Race Discrimination, Harassment and Retaliation)**

100. Plaintiff Benjamin Ochieng repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

101. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

102. In discriminating against and harassing Mr. Ochieng because of his race, and in retaliating against Mr. Ochieng for his complaints of discrimination and harassment, Defendant violated Title VII.

103. Defendant's violations were intentional and willful.

104. Defendant's violations warrant the imposition of punitive damages.

105. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Benjamin Ochieng has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT II**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.**
**(National Origin Discrimination, Harassment and Retaliation)**

106. Plaintiff Benjamin Ochieng repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

107. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

108. In discriminating against and harassing Mr. Ochieng because of his national origin, and in retaliating against Mr. Ochieng for his complaints of discrimination and harassment, Defendant violated Title VII.

109. Defendant's violations were intentional and willful.

110. Defendant's violations warrant the imposition of punitive damages.

111. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Benjamin Ochieng has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT III**
**Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.**
**(Age Discrimination, Harassment and Retaliation)**

112. Plaintiff Benjamin Ochieng repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

113. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the ADEA.

114. Plaintiff is, and was at the time of his termination, over forty years of age, and was an individual within the class protected by the Age Discrimination in Employment Act.

115. In discriminating against and harassing Mr. Ochieng because of his age, and in retaliating against Mr. Ochieng for his complaints of discrimination and harassment, Defendant violated the Age Discrimination in Employment Act.

116. Defendant's violations were intentional and willful.

117. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

118. As the direct and proximate result of Defendant's violation of the Age Discrimination in Employment Act, Plaintiff Benjamin Ochieng has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT IV**
**Civil Rights Act of 1866, 42 U.S.C. § 1981**
**(Race Discrimination, Harassment and Retaliation)**

119. Plaintiff Benjamin Ochieng repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

120. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

121. In discriminating against and harassing Mr. Ochieng on the basis of his race, and in retaliating against Mr. Ochieng for his complaints about discrimination and harassment, Defendant violated Section 1981.

122. Said violations were intentional and willful.

123. Said violations warrant the imposition of punitive damages.

124. As a direct and proximate result of the unlawful employment practices engaged in by Defendant, Plaintiff has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

**COUNT V**
**Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.**
**(Race, Age and National Origin Discrimination, Harassment and Retaliation)**

125. Plaintiff Benjamin Ochieng repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

126. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

127. In discriminating against and harassing Mr. Ochieng because of his race, age and national origin, and in retaliating against Mr. Ochieng for his complaints of discrimination and harassment, Defendant violated the Pennsylvania Human Relations Act.

128. As the direct and proximate result of Defendant's violations of the Pennsylvania Human Relations Act, Plaintiff Benjamin Ochieng has sustained loss of earnings, severe

emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

129. Plaintiff Benjamin Ochieng repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Benjamin Ochieng respectfully requests that this Court enter judgment in his favor and against Defendant The Vanguard Group, Inc., and Order:

1. Appropriate equitable relief, including reinstatement or front pay;
2. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment and retaliation;
3. Defendant to compensate Plaintiff with the wages and other benefits and emoluments of employment lost because of Defendant's unlawful conduct;
4. Defendant to pay Plaintiff punitive damages;
5. Defendant to pay Plaintiff liquidated damages;
6. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;
7. Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;
8. Plaintiff be granted any and all other remedies available under Title VII, the ADEA, Section 1981 and the PHRA; and
9. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff Benjamin Ochieng hereby demands trial by jury as to all issues so triable.

BELL & BELL LLP

By: */s/ Christopher A. Macey, Jr.*
Christopher A. Macey, Jr., Esquire
Attorney I.D. No. 207800
1617 John F. Kennedy Boulevard
Suite 1254
Philadelphia, PA 19103
(215) 569-2500

*Attorneys for Plaintiff Benjamin Ochieng*

Dated: September 28, 2026